RECEIVED
2019 APR 26  PM 1:58

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
☐ Eastern (Jackson)   DIVISION
☒ Western (Memphis) DIVISION

Connie A. Davis )
      Plaintiff, )
 )
vs. ) No. _____
 )
Methodist LeBonheur Healthcare )
      Defendant. )

## COMPLAINT

1. This action is brought for discrimination in employment pursuant to *(check only those that apply)*:

    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) (race, color, gender, religion, national origin).
   **NOTE:** *In order to bring a suit in federal district court under Title VII, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 – 634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 92-592, the Civil Rights Act of 1991, Pub. L. No. 102 -166)
   **NOTE:** *In order to bring a suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission.*

    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 – 12117 (amended by the ADA Amendments Acts of 2008, Pub. L. No. 110-325 and the Civil Rights Act of 1991, Pub. L. No. 1102-166).
   **NOTE:** *In order to bring a suit in federal district court under the Americans with Disabilities Act, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

## JURISDICTION

2. Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, and any related claims under Tennessee law.

## PARTIES

3. Plaintiff resides at:

1437 Albon Drive, Cordova, TN. 38016
STREET ADDRESS

Shelby, TN, 38016, 901-496-6416
County / State / Zip Code / Telephone Number

4. Defendant(s) resides at, or its business is located at:

1211 Union Ave
STREET ADDRESS

Shelby, Memphis, TN, 38104
County / City / State / Zip Code

NOTE: If more than one defendant, you must list the names, address of each additional defendant.

_____

_____

_____

_____

_____

5. The address at which I sought employment or was employed by the defendant(s) is:

_____

STREET ADDRESS

__Shelby__, __Memphis__, __TN__, __38104__.
County        City            State        Zip Code

6. The discriminatory conduct of which I complain in this action includes *(check only those that apply)*

- ☐ Failure to hire
- ☒ Termination of my employment
- ☐ Failure to promote
- ☒ Failure to accommodate my disability
- ☐ Unequal terms and conditions of my employment
- ☒ Retaliation
- ☒ Other acts *(specify)*: Hostile Work Environment

**NOTE:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

7. It is my best recollection that the alleged discriminatory acts occurred on:

Date(s) __January 1, 2018__

8. I believe that the defendant(s) *(check one)*:

- ☐ is still committing these acts against me.
- ☒ is <u>not</u> still committing these acts against me.

9. Defendant(s) discriminated against me based on my:
*(check only those that apply and state the basis for the discrimination. For example, if religious discrimination is alleged, state your religion. If racial discrimination is alleged, state your race, etc.)*

3

☐ Race_____

☐ Color_____

☐ Gender/Sex_____

☐ Religion_____

☐ National Origin_____

☒ Disability_____

☒ Age. If age is checked, answer the following:
I was born in_____. At the time(s) defendant(s) discriminated against me.

I was [ ] more [ ] less than 40 years old. *(check one)*

**NOTE:** *Only those grounds raised in the charge filed the Equal Employment Opportunity Commission can be considered by the federal district court.*

10. The facts of my case are as follows:
Please see additional sheets for Facts.

I have over 1,000 documents of Medical Records upon Defendant's Request during Discovery.

*(Attach additional sheets as necessary)*

**NOTE:** *As additional support for your claim, you may attach to this complaint a copy of the*

4

*charge filed with the Equal Employment Opportunity Commission or the Tennessee Human Rights Commission.*

11. It is my best recollection that I filed a charge with the Tennessee Human Rights Commission regarding defendant's alleged discriminatory conduct on:_____

12. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct on: 12/21/2018
   Date

**Only litigants alleging age discrimination must answer Question #13.**

13. Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct. *(check one):*

   [X] 60 days or more have elapsed

   [ ] Less than 60 days have elapsed.

14. The Equal Employment Opportunity Commission *(check one)*:

   [ ] has <u>not</u> issued a Right to Sue Letter.

   [X] has issued a Right to Sue letter, which I **received** on 02/03/2019
   Date

***NOTE:*** *This is the date you <u>received</u> the Right to Sue letter, not the date the Equal Employment Opportunity Commission issued the Right to Sue letter.*

15. Attach a copy of the Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.

***NOTE:*** *You must attach a copy of the right to sue letter from the Equal Employment Opportunity Commission.*

16. I would like to have my case tried by a jury:

   [X] Yes

   [ ] No

5

**WHEREFORE,** plaintiff prays that the Court grant the following relief:

☐ direct that the Defendant employ Plaintiff, or

☐ direct that Defendant re-employ Plaintiff, or

☐ direct that Defendant promote Plaintiff, or

☐ order other equitable or injunctive relief as follows:_____

☒ direct that Defendant pay Plaintiff back pay in the amount of $962.00 per wk from date of termination to the end of trial and interest on back pay;

☒ direct that Defendant pay Plaintiff compensatory damages: Specify the amount and basis for compensatory damages: $300,000 for Emotional distress for forcing me back to work with threats) See #10 pg 4 / $500,000 to $2.5 Million if Jury finds intentional Discrimination

_Carrie Ayers_
SIGNATURE OF PLAINTIFF

Date: 04/26/2019

1437 Alben Drive
Address
Cordova, TN. 38016
901-496-6416
Phone Number

6

I Connie Davis Have read the facts in number 10 and I believe they accurately depict the fact that supports my allegations I filed with the EEOC Intake Worker and my <u>initials</u> below besides each facts also in addition to my <u>signature</u> indicates I have reviewed the facts and I believe they are relevant under each count I raised at EEOC and they are there to clarify and embellished the general statement the EEOC Intake worker placed on the filed Charge of Discrimination. I am aware that my demotion was not on my EEOC Charge of discrimination and I can not per the Court's form bring up facts that do not support my allegations made in the EEOC Charge.

X _____

<u>Connie Davis Signature</u>  April 26, 2019 Date

<u>Number 10: Facts of Plaintiff's Case</u>

- ❖ Exhibit 1: EEOC Documents (Charge of Discrimination and Right to Sue)
- ❖ Collective Exhibit 2: Termination Documents
- ❖ Collective Exhibit 3: Disability/FMLA/ Leave Documents
- ❖ Collective Exhibit 4: Medical Information Documents
- ❖ Exhibit 5: Supportive Sworn Affidavits

<u>COUNT ONE: DISABILITY DISCRIMINATION</u>

a. On October 5, 2016, Plaintiff suffered from a medical trauma that caused hospitalization monthly between October 2016 and January 2018.

b. Plaintiff was informed on January 5, 2018 that her position was being eliminated due to restructuring.

c. On April 5, 2018, Plaintiff was informed that she was discharged for being unable to return from medical leave of absence and having exhausted all of her leave.

d. Plaintiff after she was hired at Methodist LeBonhuer Healthcare as a Pharmacy Coordinator/Analyst developed and suffered from debilitating work -related chronic stress, chronic migraine disease, stroke level hypertension, seizures, and facial trigeminal neuralgia.

e. On several occasions Plaintiff used FMLA leave.

f. On September 30, 2016 Plaintiff experienced a horrific more severe type of migraine while performing job Responsibilities as a Buyer while sitting at her desk at work.

g. Plaintiff informed Jeanette Strickland Manager, Cynthia Bardwell Director, Terry Duncan, HR Corporate Manager and Renita Mattox, FMLA Leave Administrator on September 30, 2016 of her illness.

h. Respondent's employee and Plaintiff's colleague walked her down to the Emergency Room where she had to undergo extensive medical exams.

i. Respondent's own emergency room revealed through a Spinal Tap that Plaintiff suffered from a slow leaking brain bleed.

j. Plaintiff was given medications to attempt to slow/stop the bleeding, however over the next few days it had worsen.

k.  On October 5, 2016, Plaintiff underwent Emergency Brain Aneurysm Surgery in which a Coil and Endovascular Stent was placed in her brain.

l.  Plaintiff was in Neuro ICU for 3-4 days, Stepdown ICU and discharged home.

m.  Plaintiff's FMLA dates for her first (1St) serious medical issues were for September 30, 2016 – October 31, 2016.

n.  Plaintiff begin to suffer immensely on November 10, 2016 with Monthly Hospitalizations because of chronic health setbacks due to FMLA harassment, exhaustion, FMLA retaliation and fear of losing her job.

o.  Upon each release from the hospital or Physician's care for more than 3 working days, Plaintiff was required to go to Methodist Associate Healthcare 1365 Eastmoreland, Suite 400, for clearance to return to work.

p.  The Nurses would evaluate and conduct blood pressure readings and temperatures.  After the exam, they would email HR Director Mrs. Terry Duncan, Manager Jenette Strickland, and Director Cynthia Bardwell.

q.  Plaintiff requested accommodations in accordance with the American Disability Act due to limited mobility issues, it would take her a little longer to walk throughout the hospital for lunch, meeting rooms etc.

r.  Plaintiff was subjected to timed breaks despite the fact that she needed extra time for restroom breaks as needed because her vision became severely impaired and she would need to rest her head.

s. Plaintiff at all times had to write a note, email, or verbally advise either one of Management that she was taking a rest-room break, 15 min break, and lunch break and where she would poss**ibly be located.**

t. Plaintiff was privately DENIED simple accommodations

u. On, January 5, 2018 Respondent's HR Corporate Director Mrs. Terry Duncan called Plaintiff in to inform that her that her position as a Buyer in Accounts Payable was eliminated due to Corporate Department Restructuring effectively immediately.

v. On April 5, 2018 Plaintiff was issued a Separation Notice that stated she was discharge because she was **unable to return to work** from medical leave of absence and had exhausted all her leave.

w. On April 6, 2018 at 5 am. Plaintiff went to admissions at MLH-University for check in and Plaintiff was told she was terminated on March 16, 2018.

x. HR Director, Renita Mattox, FMLA Administrator, Mrs. Terry Duncan, Tina Sims did not receive an official letter of separation

y. Plaintiff was prevented from having a life-threatening brain procedure (another brain aneurysm was forming) due to lack of medical insurance.

z. Plaintiff was forced to wait an additional 10 days.

aa. Respondent's Senior Director of HR Operations Trina Sims offered Plaintiff the Severance Agreement, in which she did not agree to nor did she sign it.

bb. Plaintiff was hospitalized from November 21, 2017 through December 31, 2018. due to complications from recent contraction of Bacterial /Viral Meningitis .

**COUNT TWO: AGE DISCRIMINATION** (*Plaintiff believes she has been discriminated against in violation of the Age Discrimination Employment Act (ADEA)*

cc. Plaintiff is 43 years old.

dd. On May 2018, Plaintiff was made aware that she was replaced by a person in their thirties (30's).

**COUNT THREE: RETALIATION** (*Plaintiff believes she has been retaliated against and subjected to a hostile work environment; Interference and harassment with FMLA Approval process and while on Medical leave that Created a Hostile Work Environment)*:

ee. Plaintiff completed paperwork for an FMLA request for a leave of absence for a serious healthcare issues for October 4, 2017 through October 16, 2017.

ff. Plaintiff informed Respondent on October 20, 2017 of her need to take Family Medical Leave.

gg. Respondent's Leave Administrator Renita Mattox sent an email to Plaintiff on October 15, 2016 regarding alleged non receipt of Plaintiff's FMLA paperwork.

hh. On November 17, 2016, Plaintiff emailed Respondent's Leave Administrator Renita Mattox, that she completed her FMLA forms.

ii. On November 20, 2016, Respondent approved Plaintiff's FMLA from September 30 thru October 31, 2016.

jj. Intermittent FMLA / MLH leave without pay was approved for physician appointments.

kk. Plaintiff was hospitalized every month from September 30 – present day due to complications with recovery.

ll. Respondent **threatened** Plaintiff with termination on multiple occasions while she was still in the hospital recovering from brain injury.

mm. Plaintiff was so afraid of losing her job and she would rush back to work and suffer numerous health declines and recovery setbacks.

nn. Renita Mattox, FMLA Administrator came to Plaintiff's department unannounced in October 2017 to advise Plaintiff of potential termination for her health issues.

oo. Plaintiff asked Renita Mattox with her Manager Janette Strickland present whether or not has she ever made a "Personal (hospital) visit to anyone else regarding FMLA".

pp. Respondent has never advised Plaintiff of any other of the 14,000 MLH Employees of their FMLA Exhaustion and potential termination as a result.

qq. Plaintiff reported to Respondent's HR Manager, Ms.Terry Duncan, that Ms. Mattox presence was intimidating and retaliating against her based on the fact that Plaintiff's Husband Mr. Damon Davis, Compensation Team Leader at UTHSC where Ms. Mattox was formerly employed.

rr. Renita Mattox, FMLA Administrator position at UTHSC was eliminated.

ss. Plaintiff had no idea the Ms. Mattox was the new MLH FMLA Leave Administrator until she hand-delivered her FMLA forms to her in her office.

tt. Renita's job was eliminated, and she assumed Plaintiff's Husband had something to do with it, due to her change in demeanor upon realizing who Plaintiff was.

uu. Plaintiff reported to Respondent's HR Manager, Ms.Terry Duncan, that Ms. Mattox's actions towards her felt like to her that she was not there to help her but instead continued to stress and harass and threaten her with Termination on MLH LEAVE".

vv. Respondent did not investigate her workplace reporting of hostile work environment of threats of termination.

ww. Plaintiff specifically requested asked documentation regarding FMLA regaining of her time.

xx. Respondent told Plaintiff that they were on an FMLA Rollback Schedule where once she exhausted 12 weeks, it would NOT automatically become effective on the next calendar year to date.

yy. Plaintiff requested the FMLA Policy, but Respondent failed to provide her with a copy.

zz. Respondent harassed and threaten termination if Plaintiff did not return to work, Upon being rushed to be released by her Neurosurgeons Dr. Daniel Hoit of Semmes-Murphy Clinic released Plaintiff to return to work on or around October 31,2016.

aaa. Plaintiff while on FMLA was subjected to multiple phone calls from Human Resources leave administrator Renita Maddox.

bbb. Plaintiff while on FMLA was subjected to multiple phone calls from her Manager Janette Strickland.

ccc. Plaintiff while on FMLA was subjected to multiple phone calls from Director Cynthia Bardwell

ddd.     Plaintiff while on FMLA was subjected to multiple Human Resources generated letters advising her that her position would be posted if she did not return.

eee.     Plaintiff would consult her Team of HealthCare Providers to release her so that she could return to work to save her position.

fff.     Management would visit Plaintiff's hospital room without consent just to make sure "She was SICK".

ggg.     The FMLA dates Respondent provided were incorrect and Plaintiff was told that Respondent has a rolling backwards dates to receive time.

hhh.     Plaintiff requested the policy on FMLA but it was never given to her.

iii.     On April 23, 2018 Respondent informed Plaintiff that her position was **eliminated** on March 16, 2018.

jjj.     Respondent's HR Manager, Terry Duncan failed to provide Plaintiff with the date of her termination.

kkk.     Respondent's HR Corporate Director Mrs. Terry Duncan later contradicted her January 5, 2018 justification and reason for Plaintiff's termination when she reported on the State of Tennessee Dept. of Employment Security Form, that Plaintiff was "discharge: because she was unable to return to work from a Medical Leave of Absence and had she exhausted All of Her Leave".

lll.     Plaintiff was discharged due to excessive FMLA/Medical Leave as a direct result of a rupturing Brain Aneurysm on October 5, 2016.

mmm.     Plaintiff was terminated when she was currently on FMLA days she accrued.

nnn.   Respondent informed Plaintiff that her FMLA was exhausted due to Respondent's Methodist LeBonhuer Healthcare's "FMLA ROLL BACK ACCURAL POLICY".

ooo.   Plaintiff requested the MLH Policy on numerous occasions, however to no avail

ppp.   Plaintiff was told through HR written email notifications that she was now on MLH Leave (Methodist LeBonhuer Leave that was NOT JOB PROTECTED.

qqq.   Plaintiff had to request her payment for her last paycheck from Respondent and she **did not** have any PTO for FMLA because she was told it was exhausted.

rrr. Respondent's Senior Management was rushing Plaintiff back to work by threatening to terminate her.

sss. Plaintiff after receiving threats, returned back to work not well and still ended up being admitted into the Hospital monthly from October 5, 2016 through January 2018 due to complications and stress from work.

ttt.  The buyer's attitudes became disgruntle with Plaintiff because her workload had become a burden upon them.

uuu.   The five (5) buyers would always in a joking manner say to Plaintiff, "If their husband would allow them to remain at home, they would, maybe it is best for you to remain at home and not rush back to work".

vvv.   Plaintiff's Manager, Jeanette Strickland told Plaintiff while she was working that she looked sick and that her face was twisted. And that she knew it

was tough on her and that it was hard on everyone being short staffed while she was out.

www.     Plaintiff's Manager, Jeanette Strickland told Plaintiff while she was working that her colleagues are doing the best, they could rearranging their vacations around her doctors appointments and that they never knew when nor how long she would be out.

xxx.     Insensitive and public comments Plaintiff endured regarding her illness and her absence due to her serious healthcare condition caused her to feel guilty about her traumatic brain injury, that often-produced bouts of Plaintiff hyperventilating in the ladies room.

yyy.     Insensitive and public comments Plaintiff endured regarding her illness and her absence due to her serious healthcare condition caused her to visit the chapel for some type of peace of mind from emotional torment and feelings or workplace isolation and to gather her thoughts in order to navigate her way through the remainder of the days.

zzz.     Insensitive and public comments Plaintiff endured regarding her illness and her absence due to her serious healthcare condition caused her to feel like she was in a hostile work environment and created more stressed as Management was aware and participated in the insensitive comments.

aaaa.    MLH. Benefits Dept.  Per Terry Duncan She told her to call Benefits!!!!!  To alert them of her job was eliminated and she obtain a letter of insurability.

bbbb.    Per Benefits Manager Mrs. Denise Moyer, they were not aware of any "buyer position that had been restructured of eliminated"!!!

cccc. She called benefits and left numerous voicemails regarding her insurance not lapsing.

dddd. **Claim for Damages:** Plaintiff was hired by Respondent on April 5, 2015 as a Program Coordinator-Pharmacy Supply Chain at the payrate of $24.05, weekly pay of $962.00 and yearly pay of $50,024.00.

eeee. Plaintiff was the only minority analyst/coordinator within the pharmacy supply chain 340 pharmacy discount federal program.

ffff. Plaintiff was demoted into the Department of Accounts Payable

gggg. Plaintiff was a "Floater" in the office, where her duties included opening mail, file clerk, and limited duties with reconciling vendor accounts.

hhhh. Respondent's actions caused Plaintiff to suffer additional medical procedures and emotional distress.

iiii. Plaintiff currently sees a mental health provider and her medical bills continue to accumulate.

jjjj. Plaintiff seeks and is entitled to $300,000 in compensatory damages, back pay from date of termination to end of trial and seeks punitive damages in the range from $500,000 to 1.5 million if the jury finds intentional discrimination.

---

kkkk. I received the Court's Pro Se Manual link:

https://www.tnwd.uscourts.gov/pro-se-litigants.php

---

llll. I received step by step information:

https://www.tnwd.uscourts.gov/pdf/content/ProSeGuide.pdf

mmmm.   I am fully aware that Attorney Hamilton is not my representative in Court and that she will be sending me a Notice of Withdrawal as per my Retainer Agreement from Unemployment matter and EEOC matter. Therefore, I know nor do not expect for Attorney Hamilton to file or represent be before the United States Federal Court.  I know the Court states that Pro Se means to file without an Attorney.  I also know that my lawsuit has an opportunity to go to mediation if it is not dismissed form a defense strategy the Defendant has a right to file.

I know Attorney Hamilton deleted facts to decrease the number of facts and pages of my complaint, I know the Defendant will file