IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**CONNIE A. DAVIS,**

    **Plaintiff,**

v.                                       Case 2:19-cv-02264-JTF-cgc

**METHODIST LeBONHEUR
HEALTHCARE,**

    **Defendant.**

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**

    Before the Court is Defendant Methodist LeBonheur Healthcare's ("Defendant" or "Methodist") Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry ("D.E.") #1). The instant motion has been referred to the United States Magistrate Judge for Report and Recommendation.[1]

**I.    Introduction**

    On April 26, 2019, Plaintiff Connie A. Davis ("Plaintiff") filed a *pro se* Complaint alleging violations of Title VII of the Civil Rights of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. §§ 12112, *et seq.* ("ADA"), and the Family Medical

---

[1] The instant case has been referred to the United States Magistrate Judge by Administrative Order 13-05 pursuant to the Federal Magistrates Act, 28 U.S.C. §§ 631-639. All pretrial matters within the Magistrate Judge's jurisdiction are referred pursuant to 28 U.S.C. § 636(b)(1)(A) for determination, and all other pretrial matters are referred pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) for report and recommendation.

Leave Act, 29 U.S.C. §§ 2601, *et seq*. ("FMLA").  On the standard form provided to *pro se* litigants to file complaints, which she utilized, Plaintiff checked the boxes alleging that she was discriminated against on the basis of disability and age.  Plaintiff alleges that the discriminatory conduct includes failure to accommodate her disability, hostile work environment, retaliation, and termination of her employment.

On February 10, 2020, Defendant filed its Motion to Dismiss Plaintiff's Complaint. Defendant argues as follows: (1) that Plaintiff failed to exhaust her administrative remedies as to her Title VII and ADA failure-to-accommodate claims; (2) that, even if Plaintiff exhausted her Title VII administrative remedies, her Complaint does not state a claim under Title VII; (3) that Plaintiff's Complaint does not state a claim under the ADA; (4) that Plaintiff's Complaint does not state a claim under the ADEA; (5) that Plaintiff's Complaint does not state a claim under the FMLA for interference, harassment, or retaliation.

Local Rule 12.1(b) provides that the "party opposing a motion to dismiss must file a 0response within 28 days after the motion is served."  Plaintiff failed to do so.  On March 13, 2020, the Court issued an Order to Show Cause requiring Plaintiff to respond to Defendant's Motion to Dismiss within fourteen (14) days of the entry of that Order.  The Order to Show Cause explicitly provided that "[f]ailure to do so will result in the Magistrate Judge recommending that the Motion to Dismiss be granted."  To date, Plaintiff has failed to respond.

**II.     Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a claim may be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In addressing a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in

2

the light most favorable to plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (citing *Twombly*, 550 U.S. at 555).

Nonetheless, a complaint must contain sufficient facts "state a claim to relief that is plausible on its face'" to survive a motion to dismiss. *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 US. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Id.* at 678-79.

Pleadings and documents filed by *pro se* litigants are to be "liberally construed," and a "pro se complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (2007) (quoting *Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976)). However, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)). The basic pleading essentials are not abrogated in *pro se* cases. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). A *pro se* complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barnett v. Luttrell*, 414 Fed. Appx. 784, 786 (6th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 678) (internal quotations and emphasis omitted). District Courts "have no obligation to act as counsel or paralegal" to *pro se* litigants. *Pliler v. Ford*, 542 U.S. 225, 231 (2004). District Courts are also not "required to create" a *pro se* litigant's claim for him. *Payne v. Secretary of Treasury*, 73 Fed. Appx. 836, 837 (6th Cir. 2003).

**III. Analysis**

    ***a. Plaintiff's Failure to Respond to Motion to Dismiss and Order to Show Cause***

As a threshold matter, Plaintiff has failed to respond to both Defendant's Motion to Dismiss and this Court's Order to Show Cause. The Order to Show Cause provided that dismissal would be recommended under such circumstances. Accordingly, it is RECOMMENDED that Defendant's Motion to Dismiss may be GRANTED for failure to respond to the motion and to this Court's Order.

    ***b. Title VII Claim***

Turning to the merits of the instant motion, Defendant first asserts that Plaintiff did not exhaust her administrative remedies as to any Title VII claim she seeks to raise.[2] "In designating

---

[2] Plaintiff's Complaint only contains a brief mention of Title VII. Specifically, the form provided to *pro se* litigants on which to file a complaint initially requires the plaintiff to check the box indicating the statutes pursuant to which she seeks to bring her employment discrimination action. Plaintiff's Complaint checked the box for Title VII. (Compl. ¶ 1).

4

the procedure for challenging prohibited employment discrimination under Title VII, Congress gave initial enforcement responsibility to the EEOC." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). "Thus, an employee alleging employment discrimination in violation of the statute must file an administrative charge with the EEOC within a certain time after the alleged wrongful act or acts." *Id*. (citing 42 U.S.C. § 2000e-5(e)(1)). "The charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Younis*, 610 F.3d at 361 (citing 29 C.F.R. § 1601.12(b)).

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis*, 610 F.3d at 361 (citing 42 U.S.C. § 2000e-5(f)(1); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). "This rule serves the dual purpose of giving the employer information concerning the conduct about which the employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion." *Younis*, 610 F.3d at 361 (citing *Alexander*, 415 U.S. at 44). "Hence, allowing a Title VII action to encompass claims outside the reach of the EEOC charges would deprive the charged party of notice and would frustrate the EEOC's investigatory and conciliatory role." *Younis*, 610 F.3d at 362.

"At the same time, because aggrieved employees—and not attorneys—usually file charges with the EEOC, their *pro se* complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Id*. (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006)). Thus, a plaintiff may also pursue a claim in this Court if it is "limited in scope to the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Davis v. Sodexho*, 157 F.3d

---

However, there are no factual allegations in her Complaint alleging that she was discriminated against on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. 2000e-2.

460, 463 (6th Cir. 1998) (citing *EEOC v. McCall Printing Corp.*, 633 F.2d 1232, 1235 (6th Cir. 1980)). Additionally, "[w]hen the EEOC investigation of one charge *in fact* reveals evidence of a different type of discrimination against the plaintiff, a lawsuit based on the newly understood claim will not be barred." *Davis*, 157 F.3d at 463.

Here, Plaintiff did not mention Title VII in her Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination. Further, she did not check any boxes to indicate that she was discriminated or retaliated against on the basis of race, color, sex, religion, or national origin. *See* 42 U.S.C. 2000e-2; *Garcimonde-Fisher v. Area203 Mktg., LLC*, 105 F. Supp. 3d 825, 835 (E.D. Tenn. 2015) ("A plaintiff can explicitly state a claim in the charge by, for example, checking the box . . . ."). Additionally, Plaintiff does not include any facts indicating that she was discriminated or retaliated against on these bases, nor does she even identify her race, color, religion, or national origin. Instead, the allegations in her EEOC charge pertain to discrimination on the basis of disability and age, which are not covered by Title VII. *See* 42 U.S.C. 2000e-2. Accordingly, it is RECOMMENDED that Plaintiff failed to exhaust her administrative remedies as to any Title VII claim she seeks to pursue in this Court. Thus, it is RECOMMENDED that Defendant's Motion to Dismiss Plaintiff's Title VII claim be GRANTED.

### c. *ADA Failure-to-Accommodate Claim*

Next, Defendant asserts that Plaintiff did not exhaust her administrative remedies as to her ADA failure-to-accommodate claim. The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of

6

employment." 42 U.S.C. § 12112(a). As with Title VII claims, discussed more fully, *supra*, the exhaustion of administrative remedies is a condition precedent to an ADA suit, *see Irvin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000)), and the exhaustion requirements under each statute are the same, 42 U.S.C. § 2000e-5 (setting forth the procedures for enforcing Title VII); 42 U.S.C. § 12117(a) (adopting the procedures of 42 U.S.C. § 2000e-5 for ADA claims).

Upon review, Plaintiff's EEOC Charge of Discrimination alleges that she was discriminated against on the basis of disability and that she was "discharged for being unable to return from medical leave of absence"; however, it does not include any facts regarding either a request or a denial of ADA accommodations. As this Court has reasoned, "disability discrimination claims and claims alleging failure to accommodate are analytically distinct. . . . [T]he two claims are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability. Simply put, an administrative charge alleging disability discrimination alone does not automatically exhaust administrative remedies for a failure-to-accommodate claim." *Tabitha Phipps v. Accredo Health Group, Inc.*, No. 2:15-cv-02101-STA-cgc, 2016 WL 3448765, at *16 (citations and internal quotation marks omitted). Accordingly, it is RECOMMENDED that Plaintiff failed to exhaust her administrative remedies on her ADA failure-to-accommodate claim. Thus, it is RECOMMENDED that Defendant's Motion to Dismiss Plaintiff's ADA failure-to-accommodate claim be GRANTED.

### *d. ADA Discriminatory-Discharge Claim*

Next, Defendant argues that Plaintiff has failed to plead a *prima facie* case of discriminatory discharge under the ADA. To establish a *prima facie* case of discriminatory discharge, Plaintiff must show as follows: (1) that she was disabled under the ADA; (2) that she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations; (3) that she suffered an adverse employment action; (4) that the employer knew or had reason to know of the employee's disability; and, (5) the disabled individual was replaced. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891-92 (6th Cir. 2016) (citing *Monette v. Electronic Data Sys. Corp*, 90 F.3d 1173, 1185 (6th Cir. 1996), abrogated on other grounds by, *Lewis v. Humboldt Acquisitions Corp.*, 681 F.3d 312 (6th Cir. 2012) (en banc)). Under the ADA, an individual is "otherwise qualified" for a position when that individual "can perform the essential functions" or "fundamental job duties" of the position. 42 U.S.C. § 12111(8); *Johnson v. Cleveland City School Dist.*, No. 10-3267, 2011 WL 5526465, at *8 (6th Cir. Nov. 15, 2011); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 456 (6th Cir. 2004).

Defendant argues that Plaintiff's Complaint neither describes the essential functions of her position at Methodist nor pleads that she was otherwise qualified to perform them. Although it is true that Plaintiff's Complaint only provides basic information about her position and her qualifications, the prima facie case "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002) (considering whether a prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) must be plead to overcome a motion to dismiss a Title VII complaint); *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696 6t Cir. 2008) (applying *McDonnell Douglas* framework to ADA cases). To survive a motion to dismiss,

a plaintiff must only comply with Rule 8(a) of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

Upon review, Plaintiff's Complaint alleges as follows: (1) she was hired at Methodist for the position she describes as "Pharmacy Coordinator/Analyst" and "Program Coordinator-Pharmacy Supply Chain" (Compl. ¶¶ d, dddd); (2) she was demoted into the accounts-payable department and performed job responsibilities as a "Buyer" and a "Floater," which included "opening mail, [being a] file clerk, and [performing] limited duties with reconciling vendor accounts" (*Id*. at ¶¶ f, u, ffff, gggg); (3) she suffered from "debilitating work-related chronic stress, chronic migraine disease, stroke level hypertension, seizures, and facial trigeminal neuralgia"; (*Id*. ¶ d); (4) she experienced a headache at her desk at Methodist that was later diagnosed as a "slow leaking brain bleed" (*Id*. ¶¶ f-l); (5) she suffered "medical trauma" that resulted in hospitalization monthly from October 2016 until January 2018 (*Id*. ¶¶ a, n); (6) she was required to undergo screenings at Methodist to be cleared to return to work (*Id*. ¶ n); (7) she requested accommodations under the ADA "due to limited mobility issues" and vision impairment, which were denied (*Id*. ¶¶ q-r, t); (8) she was discharged on April 5, 2018 "for being unable to return from medical leave of absence" (*Id*. ¶¶ c, v); (9) that she was advised on January 5, 2018 that her position was "being eliminated due to restructuring" (*Id*. ¶¶ b, u); and, (10) that she was "replaced" in May 2018 (*Id*. ¶ dd).

The allegations in Plaintiff's Complaint are similar to those considered by the court in *Neil M. Grizzell v. Cyber City Teleservices Mktg., Inc.*, No. 3:09-cv-1141, 2010 WL 2622933, at *5-*7 (M.D. Tenn. June 25, 2010). In *Grizzell*, the plaintiff alleged the following: (1) that he had a

9

history and diagnosis of PTSD; (2) that he was employed by defendant and performed his job duties satisfactorily; (3) that he repeatedly reported to his supervisor that he needed additional treatment; (4) that his requested accommodation was denied; and, (4) that his employment was terminated. *Id.* at *6. The *Grizzell* court concluded that the plaintiff adequately pled his case of unlawful disability discrimination by alleging he was disabled, was denied accommodations, and was terminated, *id.*, and its conclusion is persuasive here.[3] Accordingly, it is RECOMMENDED that Plaintiff has satisfied the Rule 8(a) notice-pleading standard for an ADA discriminatory-discharge claim. Thus, it is RECOMMENDED in the alternative that, if the Court determines that Defendant's Motion to Dismiss Plaintiff's Complaint should not be granted in full based upon her failure to respond to the motion and to the Order to Show Cause, Defendant's Motion to Dismiss Plaintiff's ADA discriminatory-discharge claim should be DENIED.

### e. ADEA Claim

Next, Defendant argues that Plaintiff has both failed to plead a *prima facie* case of ADEA age discrimination and failed to satisfy Rule 8(a)'s pleading requirements as to this claim. The ADEA prohibits discrimination against individuals who are at least forty years of age. 29 U.S.C. § 631(a). To establish a prima facie case of ADEA age discrimination, a plaintiff must show as follows: (1) that she was at least forty years old at the time of the alleged discrimination; (2) that

---

[3] Although it is recommended that *Grizzell* is persuasive, it is important to note one key distinction, as it is central to the arguments raised in Defendant's Motion to Dismiss. In *Grizzell*, the plaintiff pled that he "performed his job duties to the defendant's satisfaction" "at all times" without the requested accommodations. *Id.* Here, Plaintiff's Complaint does not do so, and Defendant argues that Plaintiff was not able to perform the essential functions of her position due to her continual hospitalizations.

While Plaintiff will ultimately have to demonstrate that she "was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations" to succeed on her claim, Defendant has not cited any authority that such facts must explicitly be plead to survive a motion to dismiss. Accordingly, this distinction between the pleading in *Grizzell* and the pleading here do not necessitate differing results at the Rule 12(b)(6) stage.

she was subjected to an adverse employment action; (3) that she was otherwise qualified for the position; and, (4) that she was replaced by a younger worker. However, as set forth above, a plaintiff is not required to plead each element of a *prima facie* case of discrimination; instead, the Court must apply Rule 8(a)'s pleading standard requiring a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

Upon review, Plaintiff's Complaint contains two allegations regarding her ADEA claim: (1) she is forty-three years old; and, (2) in May 2018, Plaintiff was informed that she was replaced by a person in his or her thirties. (Compl. PageID 11 ¶¶ cc, dd). First, Defendants argue that these allegations are insufficient because Plaintiff does not allege that she was otherwise qualified for her position. However, as discussed, *supra*, *Swierkiewicz* does not require a plaintiff to plead facts supporting each element of a prima facie discrimination case.

Next, Defendant relies upon *Bargo v. Goodwill Industries of Kentucky, Incorporated*, 969 F. Supp. 2d 819, 823-34 (E.D. Ky. 2013), for the position that Plaintiff's Complaint is nonetheless insufficient under Rule 8(a). In *Bargo*, the plaintiff, who was represented by counsel, alleged that she was over forty, but she provided "no factual allegations to show that she was terminated based on age." *Id*. at 823. Instead, she alleged that she was disliked and that she was terminated "because of poor performance and decreased sales," *id*. at 821, but that this explanation was "merely a mask to cover-up the pattern of age discrimination . . . ," *id*. at 823. The *Bargo* court held that her failure to plead that she was replaced by a younger individual "alone does not require dismissal." *Id*. at 823. However, the court reasoned that, because she sought to infer that she was the victim of age discrimination solely due to an alleged pattern there, she must provide factual allegations regarding the pattern in her complaint. *Id*.

11

Here, Defendant argues that the *Bargo* court's holding requires Plaintiff to have alleged that its reason for terminating her was pretextual or invalid. However, this Court's reading of *Bargo* does not require such an allegation under all circumstances. Instead, it was required there solely because of Plaintiff's theory of age discrimination. Further, it flows from *Swierkiewicz* that a plaintiff who is not required to plead each element of a *prima facie* case of age discrimination is not required to plead the further elements of the *McDonnell-Douglas* burden-shifting framework. *See*, *e.g. Jonathan Bruce Collins v. Fulton Cty. Sch. Dist.*, No. 1:12-CV-1299-ODE-JSA, 2012 WL 7802745, at *17 (N.D. Ga. Dec. 26, 2012) (reasoning that a plaintiff need not plead pretext because it is an element to be proven at summary judgment or at trial). Thus, the Court finds that *Bargo* is not persuasive here. Further, as Defendants do not otherwise challenge the adequacy of Plaintiff's ADEA claim, it is RECOMMENDED that Plaintiff's ADEA claim states a claim upon which relief may be granted. Accordingly, it is RECOMMENDED in the alternative that, if the Court determines that Defendant's Motion to Dismiss Plaintiff's Complaint should not be granted in full based upon her failure to respond to the motion and to the Order to Show Cause, Defendant's Motion to Dismiss Plaintiff's ADEA claim should be DENIED.

### f. *FMLA claims*

Finally, Defendant argues that Plaintiff's Complaint fails to state any claims pursuant to the FMLA, including interference, harassment, or retaliation. The FMLA allows an employee to take a total of twelve workweeks of leave during any twelve-month period if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA makes it unlawful for any

employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the Act], 29 U.S.C. § 2615(a)(1), or to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]," *Id.* at § 2615(a)(2). Consistent with these two statutory provisions, the Sixth Circuit has recognized two discrete theories of recovery under the FMLA: the "so-called 'interference' or 'entitlement' theory"; and, the "'retaliation' or 'discrimination' theory." *Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012).

"The interference theory has its roots in the FMLA's creation of substantive rights, and '[i]f an employer interferes with the FMLA-created right to medical leave . . . , a violation has occurred.'" *Seeger*, 681 F.3d at 282 (citing *Arban v. West Publ'g Corp.*, 245 F.3d 390, 401 (6th Cir. 2003). "The central issue raised by the retaliation theory, on the other hand, is 'whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason.'" *Seeger*, 681 F.3d at 282.[4]

---

[4] Plaintiff's Complaint conclusorily alleges that she was subjected to a hostile work environment in violation of the FMLA (Compl. at PageID 11); however, as the court in set forth *Freberg v. Marquett General Health Sys.*, No. 2:13-CV-316, 2014 WL 1028891, at *4 (W.D. Mich. Mar. 17, 2014), it is "unaware of any case holding that a plaintiff may assert a hostile work environment claim under the FMLA." *Id*.

Defendant additionally asserts that Plaintiff's Complaint fails to state a claim for FMLA harassment, which a small number of courts have referenced "albeit with little or no discussion." *Bryant v. Dollar General Corp.*, No. 3:05-0840, 2006 WL 2559526, at *10 (M.D. Tenn. Aug. 31, 2006) (citing cases). The *Bryant* court determined that, "assuming such a claim exists independent of a retaliation or interference claim, . . . Plaintiff has abandoned such a claim by failing to respond to Defendant's arguments." *Id*. As Plaintiff has not responded to this motion or the Court's Order to Show Cause to articulate her position on the issue, and it appears that this Circuit does not recognize this theory of relief, it is RECOMMENDED that Defendant's Motion to Dismiss Plaintiff's FMLA harassment claim be GRANTED.

Upon review, Plaintiff alleges as follows:[5] (1) she completed FMLA paperwork for a medical leave of absence from October 4, 2017 through October 16, 2017 (Compl. ¶ ee); (2) she informed Methodist of her need to take FMLA leave on October 20, 2017 (*Id*. ¶ ff); (3) Methodist approved Plaintiff's FMLA leave on November 20, 2016 for the period of September 30 through October 31, 2016 (*Id*. ¶¶ ii); (4) intermittent FMLA leave and "MHL leave" was approved for physician appointments (*Id*. ¶ jj); (5) Plaintiff was hospitalized every month from September 30 until present day due to "complications with recovery" (*Id*. ¶ kk); (6) Methodist "threatened Plaintiff with termination on multiple occasions while she was still in the hospital recovering from brain injury" (*Id*. ¶ ll); (7) Plaintiff was so afraid of losing her job that she would "rush back to work and suffer numerous health declines and recovery setbacks" (*Id*. ¶¶ mm, sss); (8) Methodist's FMLA administrator "came to Plaintiff's department unannounced in October 2017 to advise Plaintiff of potential termination for her health issues" (*Id*. ¶ nn); (9) Plaintiff requested documentation regarding her FMLA time (*Id*. ¶ ww); (10) Methodist advised that "they were on an FMLA Rollback Schedule where once she exhausted 12 weeks, it would NOT automatically become effective on the next calendar year to date" (*Id*. ¶ xx); (11) Plaintiff requested the FMLA policy, which Methodist failed to provide (*Id*. ¶¶ yy, hhh, ooo); (12) Methodist continued to harass her and "threaten termination" if she did not return to work (*Id*. ¶¶ zz, rrr); Plaintiff received "multiple phone calls" from human resources, her manager, and a director while on FMLA leave" (*Id*. ¶ aaa); (13) Plaintiff was advised by multiple letters during her FMLA leave that her position "would be posted if she did not return" (*Id*. ¶ ddd); (14) Methodist management would visit Plaintiff's hospital room to confirm her medical status (*Id*. ¶

---

[5]  It appears to the Court that these allegations either have incorrect dates, particularly with respect to the years, or the allegations are not in chronological order.

fff); (15) Plaintiff's position was eliminated on March 16, 2018 (*Id.* ¶ iii); (16) Plaintiff was advised that her position was eliminated on April 23, 2018 (*Id.*).

Plaintiff's Complaint also contains various allegations with respect to whether her FMLA leave had been exhausted before she was terminated. Plaintiff alleges that Methodist states that she was discharged for exhausting her FMLA leave and being unable to return to work (*Id.* ¶¶ kkk, lll); however, Plaintiff asserts that she was "terminated when she was currently on FMLA days she accrued," (*Id.* ¶ mmm). Plaintiff further contends that her own attempts to verify whether she had exhausted her leave or not as of the date of her termination were complicated by Methodist's failure to provide its policy (*Id.* ¶¶ yy, hhh, ooo), its failure to provide documentation regarding her leave calculation, (*Id.* ¶ ww), its provision of incorrect FMLA dates (*Id.* ¶ ggg), its failure to "provide Plaintiff with the date of her termination," (*Id.* ¶ jjj), and its designation of certain leave as "Methodist LeBonheur Leave" ("MHL Leave") that was not FMLA-protected (*Id.* ¶ ppp).

With respect to Plaintiff's FMLA interference claim, Defendant correctly notes that, after the FMLA's statutory leave period has expired, any adverse employment action taken cannot be said to deny the employee of an FMLA benefit. *Demyanovich v. Cadon Platting & Coatings, LLC*, 747 F.3d 419, 429 (6th Cir. 2014). Defendant then argues that "Plaintiff's Complaint does not refute that she received all twelve weeks of her FMLA leave." However, as discussed, *supra*, the Court construes Plaintiff's Complaint as not only raising questions regarding its calculation but as explicitly alleging that she was "terminated when she was currently on FMLA days she accrued" and that "the FMLA dates [Methodist] provided were incorrect." Accepting these well-pleaded allegations as true, her Complaint successfully states a claim upon which

15

relief may be granted.  Accordingly, it is RECOMMENDED in the alternative that, if the Court determines that Defendant's Motion to Dismiss Plaintiff's Complaint should not be granted in full based upon her failure to respond to the motion and to the Order to Show Cause, Defendant's Motion to Dismiss Plaintiff's FMLA interferences claim should be DENIED.

With respect to Plaintiff's FMLA retaliation claim, her Complaint does not allege any direct evidence of retaliation; however, a plaintiff may prove such a claim with circumstantial evidence. *Demyanovich v. Cadon Plating & Coatings*, 747 F.3d 419, 432 (6t Cir. 2014).  To establish a *prima facie* case of FMLA retaliation, a plaintiff must demonstrate that she availed herself of a protected right under the FMLA, that she suffered an adverse employment action, and that a causal connection existed between the exercise of the employee's FMLA rights and her termination.  *Chester v. Quadco Rehabilitation Center*, 484 F. Supp. 2d 735, 743 (N.D. Ohio 2007).  As with the discrimination claims addressed, *supra*, a plaintiff is not required to plead all elements of the *prima facie* case but instead must only comply with Rule 8(a) to survive a motion to dismiss.  *Benick v. Morrow Cty. Health Dist.*, Nos. 2:20-cv-900, 2:20-cv-1058, 2020 WL 3045783, at *6 (S.D. Ohio June 8, 2020).

Here, Plaintiff alleged that she was approved for FMLA leave, received "threaten[ing]" communications and an intrusive hospital visit while on FMLA leave, and was then terminated. Although these allegations are quite conclusory, the Court is unaware of any authority holding that these allegations are sufficient to surpass the "low bar," *see Benick ,* 2020 WL 3045783, at *6, required to plead an FMLA retaliation claim.  While Methodist claims it terminated her employment only because her FMLA exhausted, "an employer's motive is 'an integral part of the analysis' of an FMLA retaliation claim," *Porter v. Five Star Quality Care-MI, LLC*, 26 F.

16

Supp. 3d 694, 701 n.6 (E.D. Mich. June 20, 2014) (citing *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006)), courts must be "especially cautious in evaluating Plaintiffs' FMLA claims . . . on the pleadings alone, before Plaintiffs have had a meaningful opportunity to explore this question of motive (as well as other pertinent factual issues) in discovery," *Porter*, 26. F. Supp. 3d at 701 n.6.  Accordingly, it is RECOMMENDED in the alternative that, if the Court determines that Defendant's Motion to Dismiss Plaintiff's Complaint should not be granted in full based upon her failure to respond to the motion and to the Order to Show Cause, Defendant's Motion to Dismiss Plaintiff's FMLA retaliation claim should be DENIED.

**IV. Conclusion**

For the reasons set forth herein, it is RECOMMENDED that Defendant's Motion to Dismiss may be GRANTED for failure to respond to the instant motion and to the Court's Order to Show Cause. In the alternative, should the District Court proceed to the merits of the instant motion, it is RECOMMENDED that Defendant's Motion to Dismiss Plaintiff's Title VII claim and ADA Failure-to-Accommodate claim be GRANTED and that Defendant's Motion to Dismiss Plaintiff's ADA Discriminatory-Discharge claim, ADEA claim, and FMLA interference and retaliation claims be DENIED.

**DATED** this 12th day of June, 2020.

                                                  s/ Charmiane G. Claxton
                                                CHARMIANE G. CLAXTON
                                                UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**